IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TYRONE GAMBLE                                                                                          PLAINTIFF

v.                                          No. 4:09CV00967 JLH

CRAIN CDJ, LLC,
d/b/a Crain Chrysler Dodge Jeep                                                                      DEFENDANT

**OPINION AND ORDER**

Tyrone Gamble alleges race discrimination and religious discrimination in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000 *et seq.*, and seeks relief against Crain CDJ, LLC, for harassment, wrongful demotion and termination, and retaliation. Crain CDJ has filed a motion for summary judgment, and the plaintiff has responded. For the following reasons, Crain CDJ's motion for summary judgment is granted.

**I.**

Tyrone Gamble began working as a salesperson at Crain Ford in October of 2007. During his tenure at Crain Ford, he worked under Kelly Harrell whom he praised as a manager, and under whom he experienced no problems. Subsequently, Harrell was transferred to Crain Chrysler Dodge Jeep, where he took the position of general manager. In June of 2008, Gamble and his sales partner, Barbara Miya, also an employee at Crain Ford, were transferred to Crain CDJ. While at Crain Ford and Crain CDJ, Gamble was the top salesperson almost every month. Crain CDJ paid him approximately $10,000 per month.

Subsequently, Keith Tully and Lee Rhodes, who had been Gamble's competitors at Crain Ford, began working at Crain CDJ. Gamble told Harrell that he did not get along with Tully. Tully went into management at Crain CDJ, and Gamble complained to Harrell that Tully neglected his

deals for so long that they would expire. In October of 2008, Harrell promoted Gamble to sales manager. As a manager, Gamble was paid a draw of $1,000 per week and was given a demonstration vehicle. He also was to be paid 2.75 percent of the gross profit of Crain CDJ. Although Gamble expected to earn more as a sales manager than he had earned as a salesman, he earned less because the dealership never generated enough profit for any sales managers to receive the 2.75 percent bonus. Gamble was the only African American manager at the dealership.

Once promoted, Gamble testified that his efforts to have a training session at the dealership met with hostility on the part of the white managers. Gamble testified that he never received access codes to DealerTrack and DealerCONNECT, which are important tools for completing deals. Instead, Gamble used Harrell's codes. According to Gamble, that he did not have his own codes hindered his ability to perform his work. Crain CDJ asserts that, since Gamble could use Harrell's codes, the fact that Gamble did not receive personal codes is irrelevant. However, Gamble testified that he often had to wait for Harrell to arrive at the office and input the codes before Gamble could use the programs. Gamble says that every other manager hired by Crain CDJ promptly received personal access codes to these programs.

Gamble testified that every manager played music compact discs but that other employees did not like it when he played instrumental gospel music. He testified that his music would be turned off or deleted when he was away from his desk. He claims that other employees told him to turn his music down and that he didn't "need to play that type of music here in the building." He said they told him "You don't need to play that, all that religious stuff." He testified that Phillip Moore, another manager, said to him "I thought you was Muslim." Gamble is a Christian. Gamble testified that Moore made similar slurs to him on a daily basis. Gamble claims that Tully would make

mocking statements such as jumping on a table and saying, "I believe, keep on preaching, preacher." Gamble testified that he listened to recordings of a renowned African American Christian minister, Creflo Dollar. Gamble says that Tully and Rhodes remarked in reference to this, "Oh, that's where you get all of your tricks on how to manipulate people buying a car, because you make people buy stuff that don't really want to buy."

Gamble contends that Crain CDJ engaged in discriminatory practices against African American customers. Specifically, Gamble testified that the dealership told salespersons to quote higher interest rates to African American customers, and that he complained about this practice to no avail.

On March 1, 2009, Gamble was reassigned back to direct sales. Gamble testified that he believes that he was demoted in retaliation for his complaints about discrimination against African American customers. After the reassignment Gamble was allowed to keep a demonstration vehicle, which was a management perquisite; he was allowed to retain a higher level of computer access than other salespersons; and he was allowed to "work his own deals." He was allowed to be his own manager and the manager of his sales partner, Barbara Miya. Gamble testified that his position during this time was "sales manager slash sales person." Gamble and Harrell disagree as to who initiated the reassignment. Harrell says that Gamble requested to be reassigned to the position of salesperson so he could earn more money, but at the summary judgment stage the Court must accept as true Gamble's testimony that he made no such request. Gamble testified that Harrell approached him about returning to the position of salesperson because he needed to reduce the number of managers due to the dealership's poor performance. According to Gamble, Harrell said he could

return to a manager position if business improved. Gamble testified that he earned more in their first week when he returned to direct sales than he would earn in a month as a sales manager.

In early April, according to Gamble, his name was taken off a transaction and credit for the transaction was given to a white salesperson, which led to some sort of confrontation between Gamble and Tully. The parties dispute the exact nature of that confrontation. Tully has testified by affidavit that Gamble cornered him and threatened to punch him in the mouth. Gamble denies that he threatened Tully. It is undisputed, however, that Tully and another manager, Jim Atkinson, told Harrell that Gamble threatened to punch Tully in the mouth. Gamble testified that Harrell then fired him. Gamble testified that he believed that Harrell believed that he had threatened to punch Tully. Harrell denies that he fired Gamble. He says that Gamble failed to show up at work after being given the opportunity to continue employment at Crain CDJ. There is also evidence that Chris Crain[1] participated in the decision as to what to do regarding Gamble's employment.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The

---

[1] Chris Crain's position is not identified in the record, but it appears that he is a member of the group that owned Crain CDJ, Crain Ford, and other automobile dealerships bearing the Crain name.

moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott Cnty.*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). But see *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

### III.

Gamble seeks relief pursuant to both 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000 *et seq*. "The elements of a Title VII disparate treatment claim and a § 1981 claim are identical." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997). Claims of racial discrimination in employment are therefore analyzed applying the same standards under both Title VII and § 1981. *Id*. Gamble's religious discrimination claims, however, are cognizable only under Title VII, not § 1981. *Abdelkader v. Sears, Roebuck & Co.*, No. L-10-511, 2010 WL 2595571, *3 (D. Md. June 24, 2010) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987)).

A. **RACE DISCRIMINATION: WRONGFUL DEMOTION OR TERMINATION**

Gamble concedes that he has no direct evidence of impermissible discrimination. Therefore, the motion for summary judgment must be analyzed under the *McDonnell Douglas* burden-shifting framework. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005) ("Because [the plaintiff] relies upon circumstantial evidence of discrimination, we assess both the Title VII race discharge claim and § 1981 discharge claim using the burden-shifting framework of *McDonnell Douglas*[.]"). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). A prima facie case of discrimination requires proof that (1) the plaintiff is a member of a protected class; (2) the plaintiff met the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004). The fourth element can be met by proof that similarly situated employees were treated differently. *Id*.

If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007). If the employer provides a legitimate reason, the plaintiff must then show that the proffered reason is a pretext for the unlawful discrimination. *Id.* Where an employee is unable to show pretext, summary judgment is appropriate. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988).

Gamble alleges that he was demoted in February 2009 when he was reassigned back to direct sales and that he was discharged on April 13, 2009, after the altercation with Tully.

1.      *Wrongful Demotion*

It is undisputed that, as an African American, Gamble is a member of a protected class. It is also undisputed that he was one of the leading salespersons employed at Crain CDJ. Crain CDJ argues, however, that the alleged demotion was not an adverse employment action

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Thomas v. Corwin*, 483 F.3d 516, 528-29 (8th Cir. 2007) (quoting *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 671 (8th Cir. 2006). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). A purely lateral transfer with no reduction in pay or benefits is not an adverse employment action. *Ledenberger v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). A reassignment resulting in demotion in title and significantly diminished responsibilities can be adverse. *Fisher v. Pharmacia of Upjohn*, 225 F.3d 915, 919-20 (8th Cir. 2000). A job reassignment "involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008).

Gamble is in an unusual situation in that he contends that his reassignment in February 2009 was an adverse employment action even though it resulted in a dramatic increase in his earnings—according to his testimony he earned as much in the first week of returning to direct sales as he earned in a month as a sales manager. Also according to Gamble's testimony, after the reassignment he was a "sales manager slash sales person." As a salesperson, Gamble engaged in

direct sales and was paid on a commission basis; yet he continued to have a level of computer access ordinarily accorded only to a sales manager. He continued to have a demonstration vehicle, which was a perquisite of a sales manager, and he was authorized to close his own transactions, as well as those of his sales partner, Barbara Miya. Thus, he continued with some managerial responsibilities after the reassignment. Gamble has presented no evidence and makes no argument that this reassignment adversely affected future employment opportunities.[2] Although the Court has found no cases on point, the Court does not believe that a reassignment from "sales manager" to "sales manager slash sales person" with a dramatic increase in pay constitutes an adverse employment action absent some evidence that the reassignment had an adverse effect on the plaintiff's future career prospects. Accordingly, Gamble cannot establish an essential element of a prima facie case of discrimination with respect to his claim of demotion.

Crain CDJ is entitled to summary judgment on Gamble's claim that he was demoted because of his race.

### 2. *Wrongful Termination*

Although the parties disagree as to whether Gamble was fired, at the summary judgment stage the Court is obligated to accept Gamble's testimony that he was fired—which obviously is an adverse employment action.

Assuming *arguendo* that Gamble met his prima facie case, Crain CDJ has presented a legitimately nondiscriminatory reason for firing him: two managers—Keith Tully and Jim Atkinson—informed Harrell that Gamble threatened to punch Tully. Gamble denies that he

---

[2] Shortly after his final day at Crain CDJ, Gamble went to work for Bale Chevrolet. He testified that he earned $15,000 during his first month at Bale.

threatened Tully, but he does not deny that Tully and Atkinson told Harrell that he had threatened Tully. Indeed, in his testimony, Gamble admits that Atkinson and Tully told Harrell that Gamble "had threatened to hit Keith in the mouth." Gamble also testified that when Harrell told him that he was fired he "took it as he [Harrell] believed what Jim and Keith were saying." Gamble offers no evidence or argument that either Harrell or Crain disbelieved the report. In determining whether the proffered reason for termination was pretext for racial discrimination, the relevant inquiry is whether Harrell and Crain believed that Gamble threatened Tully, not whether Gamble actually had threatened Tully. *See Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). Gamble's testimony effectively concedes that Harrell believed that he had threatened Tully. Neither in his testimony nor in his brief does he dispute that Chris Crain also believed it. As noted, Gamble admits in his testimony that Harrell terminated him "based on what Jim Atkinson and Keith Tully" had said.

Moreover, it is undisputed that Harrell promoted Gamble about eight months before allegedly terminating him, which militates against concluding that Harrell terminated Gamble for an impermissible discriminatory reason. *Holmes v. Hous. Auth. of City of Dumas*, 48 Fed. Appx. 217, 218 (8th Cir. 2002) ("It is undisputed that Holmes's termination was recommended by the Executive Director, who had promoted Holmes about ten months earlier. *See Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997) (fact that the same person both hired and fired plaintiff within a fairly short time creates strong evidence that discrimination was not a factor motivating the termination).").

Gamble has failed to present evidence that the proffered reason for his termination is a pretext for racial discrimination. Crain CDJ is entitled to summary judgment on Gamble's claim that he was discharged because of his race.

9

**B.     RACE DISCRIMINATION: RETALIATION**

Gamble claims that Crain CDJ took action against him because he complained of racial discrimination against himself and against Crain CDJ's African American customers. In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework also governs retaliation claims. *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir. 2007). To establish a prima facie case, a plaintiff must show that: (1) he engaged in protected conduct; (2) a reasonable employee would have found the challenged action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Id.*

Gamble alleges that Crain CDJ engaged in discriminatory conduct towards African American customers, and that he was, first, demoted and later terminated in retaliation for his complaints. With respect to the allegation that he was demoted in retaliation for engaging in protected activity, the Court has already held that the reassignment was not an adverse employment action. With respect to the termination, again Gamble has presented no evidence that the reason for his termination—that Atkinson and Tully said he threatened Tully—was a pretext. Moreover, Gamble offers nothing but speculation that he was the victim of retaliation for complaining of discrimination. *Cf. Phillips v. Matthews*, 547 F.3d 905, 911 (8th Cir. 2008) ("Phillips offers no evidence other than speculation to support a connection between her termination and FMLA leave."). Gamble offers no evidence other than his own belief that any employment action was taken because he complained of racial discrimination either against himself or against Crain CDJ's customers. "These unsubstantiated and conclusory allegations are insufficient to support an inference of pretext." *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998); *Helfter v. United Parcel*

*Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) (conclusory affidavit and deposition testimony do not preclude summary judgment).

Crain CDJ is entitled to summary judgment on Gamble's claim of retaliation.

### C. RELIGIOUS DISCRIMINATION: WRONGFUL DEMOTION OR TERMINATION

Gamble offers no evidence that he was reassigned or terminated because of his religion. Although Gamble complains that other employees disliked his gospel music and made comments to him about being Muslim and a preacher, he concedes that these statements were made by co-workers, not by the persons who made the decisions to reassign and terminate him. Harrell, who allegedly demoted and then fired Gamble, did not partake in any of this conduct. Hence there is no evidentiary basis for inferring that religion based discriminatory animus motivated Harrell when he demoted and later terminated Gamble. *Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 253 (8th Cir. 1995) (the plaintiff cannot prove "that discrimination was a motivating part in an employment decision. . . merely by introducing stray remarks in the workplace, statements by nondecision-makers, or statements by decision-makers unrelated to the decisional process itself.") (internal quotations removed).

Crain CDJ is entitled to summary judgment on Gamble's claim that he suffered an adverse employment due to his religion.

### D. RELIGIOUS DISCRIMINATION: HOSTILE WORK ENVIRONMENT

The Eighth Circuit has explained:

> Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

*Vajdl v. Mesabi Acad. of Kids Peace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). To establish a prima facie hostile work environment claim based on religion, a plaintiff must offer evidence tending to prove: (1) that he was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and his membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and, in cases involving non-supervisor employees, (5) that his employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Id*. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 966 (8th Cir. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998)). In determining whether conduct constitutes harassment, a district court must consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88, 118 S. Ct. at 2283.

Here, Gamble testified that other employees complained when he played instrumental gospel music, turned off his music when he was away from his desk, and even deleted music from his computer. When Gamble complained to Harrell, he was told that Crain CDJ did not want anyone to have music on their computer. However, Gamble testified that other managers still kept music on their computers. Gamble testified that Tully made comments to him such as "I believe, keep on preaching, preacher" and that Gamble understood these comments to refer to his belief in God's help in closing deals. Gamble says that Tully and Rhodes compared him unfavorably to a renowned

12

minister. According to Gamble, Moore said "I thought you were Muslim" to him and made "slurs" like that on a daily basis.

Assuming that these comments were directed at Gamble because of his religion, they are not sufficiently extreme to meet the standard necessary to establish a hostile work environment. They were not physically threatening, but "more akin to mere offensive utterings." *Al-Zubaidy v. TEK Industries*, Inc., 406 F.3d 1030, 1039 (8th Cir. 2005). There is no evidence that these comments interfered with Gamble's ability to perform his work. *See*, *e.g.*, *Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999) (accusation that plaintiff was preparing for a "holy war," mockingly accusing plaintiff of "preaching and praying," and claiming that plaintiff's religion taught him to hate white people did not create a hostile work environment); *Richardson v. Dougherty Cnty., Ga.*, 185 Fed. Appx. 785 (11th Cir. 2006) (rejecting Title VII hostile work environment claim where supervisor referred to plaintiff more than 50 times as "preacher man" and made comments about his religion and request for accommodation, where such conduct was not objectively severe or pervasive); *Jones v. United Space Alliance, L.L.C.*, 170 Fed. Appx. 52 (11th Cir. 2006) (dismissing hostile environment claim because complained-of conduct was not objectively severe or pervasive, where manager made derogatory remarks based on plaintiff's religion, co-worker removed flyer advertising plaintiff's church events, manager told him to remove lanyard with name "Jesus" on it, manager told him not to leave his Bible on his desk, and he was asked to turn down religious music played at work); *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373 (W. D. Pa. 2007) (granting summary judgment for employer on religious harassment claim where plaintiff, who was evangelical Christian, alleged that co-workers made isolated comments about "laying hands on" patients to "heal" them, thus


mocking her beliefs, but such comments were, at most, offensive utterances insufficient to create a hostile work environment).

Crain CDJ is entitled to summary judgment on Gamble's claim that he was subjected to a hostile work environment because of his religion.

## CONCLUSION

For the foregoing reasons, Crain CDJ's motion for summary judgment is GRANTED. Document #24. Tyrone Gamble's complaint is dismissed with prejudice.

IT IS SO ORDERED this 23rd day of February, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE